**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**LESLIE** and **JACK MILLER**,
on behalf of their minor child, **S.M.**,

      Plaintiff,

      vs.                                                                             No. **CIV 05-502 MCA/WPL**

**BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,**

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Board of Education of the Albuquerque Public Schools' Motion to Dismiss or in the Alternative Motion for Leave to Amend Answer and Add Counterclaim* [Doc. No. 5] filed on July 29, 2005. Having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises, the Court denies Defendant APS' motion and grants Plaintiffs Leslie and Jack Miller 30 days leave to re-attempt service of process on the superintendent of APS or other person designated to accept service on its behalf under the conditions specified below.

**I.    BACKGROUND**

The history of this litigation is summarized in the Court's *Memorandum Opinion and Order* in Board of Education of Albuquerque Public Schools v. Miller, Civil No. 05-487

MCA/LFG (D.N.M. July 22, 2005). In No. 05-487 MCA/LFG, the Board of Education of Albuquerque Public Schools (APS) challenged the decision of an Administrative Appeal Officer (AAO) awarding equitable relief in an administrative proceeding conducted pursuant to the procedures set forth in the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.[1] This equitable relief took the form of reimbursement for compensatory education that the student, S.M., received through August 2005. APS asserted that it would suffer irreparable harm if the Court did not enjoin this portion of the AAO's order before August 2005, because the issue would become moot after that date. The Court denied APS's motion for such injunctive relief in No. 05-487 MCA/LFG and concluded that there is no remaining case or controversy under Article III of the United States Constitution, in part because APS conceded the issue would become moot after August 2005. Accordingly, the matter was dismissed without prejudice for lack of jurisdiction.

Soon after APS filed its motion for a preliminary injunction in No. 05-487 MCA/LFG, Leslie and Jack Miller filed the present civil action (No. 05-502 MCA/WPL) against APS challenging other portions of the AAO's decision. And soon after the Court filed its *Memorandum Opinion and Order* in No. 05-487 MCA/LFG, APS filed a motion to dismiss the Millers' *Complaint* in No. 05-502 MCA/LFG for lack of personal jurisdiction, or in the alternative to amend its *Answer* so as to include a counterclaim challenging the portion of the

---

[1] The IDEA was amended in 2004, and these amendments became effective on July 1, 2005. See Pub. L. No. 108-446, 118 Stat. 2715 (2004). However, all references to the IDEA in this *Memorandum Opinion and Order* concern the version of the statute in effect before July 1, 2005, because the present action was filed before that date.

AAO's decision that was previously litigated in No. 05-487 MCA/LFG.  While offering to re-serve APS's superintendent in accordance with Fed. R. Civ. P. 4(j) and the version of Rule 1-004(H)(1)(h) NMRA that went into effect on March 1, 2005, the Millers deny that there is any defect in service of process that would warrant dismissal of this action for lack of personal jurisdiction.  The Millers also deny that APS is entitled to reassert, in the form of a counterclaim, the same challenge to the equitable relief awarded by the AAO that was previously litigated in No. 05-487 MCA/LFG.

**II.   ANALYSIS**

    **A.   APS's Motion to Dismiss for Lack of Personal Jurisdiction**

When, as here, a Court rules on a motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, "the plaintiff[s] need only make a prima facie showing of personal jurisdiction to defeat the motion."  OMI Holdings, Inc. v. Royal Ins. Co., 149 F.3d 1086, 1091 (10th Cir. 1998); see Richardson v. Alliance Tire & Rubber Co., 158 F.R.D. 475, 477-78 (D. Kan. 1994) (applying this standard to a motion based on insufficient service of process).  Under this standard, the Millers bear the burden of "demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over" APS.  OMI Holdings, Inc., 149 F.3d at 1091.  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)); see Oltremari v. Kan. Soc. & Rehab. Serv., 871 F. Supp. 1331, 1350 (D. Kan. 1994)

(applying this burden-shifting framework to a motion based on insufficient service of process).

In this case, the factual basis for APS's motion to dismiss is not an absence of the minimal contacts with the forum state necessary to support personal jurisdiction, but rather alleged defects in effecting service of process. As such, APS's motion may be construed as invoking Fed. R. Civ. P. 12(b)(5) rather than Fed. R. Civ. P. 12(b)(2). See generally Richardson, 158 F.R.D. at 477-78 (distinguishing motions under Fed. R. Civ. P. 12(b)(5) from other motions under Fed. R. Civ. P. 12(b) and concluding that a movant's reference to the wrong subsection of this rule may be disregarded where there is no prejudice to the opposing party).

Upon a showing of insufficient service of process, Fed. R. Civ. P. 12(b)(5) provides district courts with the authority to either dismiss the complaint or to quash the service and require the plaintiff to re-attempt service of process. See Sampath v. Concurrent Techs. Corp., 227 F.R.D. 399, 401 (W.D. Pa. 2005). Quashing insufficient service is generally the preferred course of action where there is a reasonable prospect that the defendant can be properly served with sufficient process in a second attempt. See Pell v. Azar Nut Co., 711 F.2d 949, 950 n.2 (10th Cir. 1983); Umbenhauer v. Woog, 969 F.2d 25, 30-31 (3d Cir. 1992).

In this case, there is a very reasonable prospect that APS can be served with sufficient process in a second attempt. APS and its counsel already have received actual notice of the Millers' *Summons* and *Complaint*, and the only remaining question is whether the

receptionist with whom the Millers' process server left these documents on her first attempt is authorized to accept service on behalf of APS's "superintendent" within the meaning of Fed. R. Civ. P. 4(j) and Rule 1-004(H)(1)(h) (as amended Mar. 1, 2005).

The Court will resolve this question by requiring APS to promptly provide the Millers' counsel with the name and business address of the superintendent or other suitable person authorized to accept service on its behalf under the new version of Rule 1-004(H)(1)(h), and then granting Plaintiff's leave to re-attempt service on that person within 30 days of the entry of this *Memorandum Opinion and Order*. Accordingly, the Court denies APS's motion to dismiss based on lack of personal jurisdiction or alleged deficiencies in service of process and, in the alternative, grants the Millers leave to re-attempt service of process within 30 days.

### B. APS's Motion for Leave to Amend Answer and Add Counterclaim

Leave to amend a pleading before case-management deadlines are established in a pretrial scheduling order pursuant to Fed. R. Civ. P. 16 "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). In addition, Fed. R. Civ. P. 13(f) prescribes a similar standard for the assertion of an omitted counterclaim at a time that does not conflict with scheduling orders under Fed. R. Civ. P. 16. It is within the Court's discretion, however, to deny leave to amend a pleading or add a counterclaim based upon a justifying reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Foman v. Davis,

371 U.S. 178, 182 (1962); see Fields v. Atchison, Topeka and Santa Fe Ry. Co., 167 F.R.D. 462, 463 (D. Kan. 1996) (discussing factors to be considered before granting leave to file counterclaim under Fed. R. Civ. P. 13(f)).

A motion to amend a pleading is futile if the resulting amendment "would be subject to dismissal." Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc., 175 F.3d 848, 859 (10th Cir. 1999). As previously indicated in the Court's *Memorandum Opinion and Order* in No. 05-487 MCA/LFG and in APS's own motion papers in that case, APS's counterclaim challenging the reimbursement awarded by the AAO would be subject to dismissal on mootness grounds because that award only applied to compensatory education provided through August 2005, and the relevant provisions of the IDEA do not provide a mechanism by which a school district may avoid or delay reimbursement for such compensatory education at this juncture.

The Court cannot undo the reimbursement obligations that APS incurred in the past without unraveling the carefully crafted set of procedural safeguards that Congress set in place when it enacted the IDEA. In this regard, the relevant portions of the Court's *Memorandum Opinion and Order* in No. 05-487 MCA/LFG bear repeating here.

The meaning and effect of the portion of the AAO's decision that APS seeks to challenge in its counterclaim is governed by the IDEA, which provides a comprehensive statutory scheme for addressing this type of challenge. In particular, Section 1415(i)(2) of the IDEA governs the right to bring a civil action challenging an administrative decision issued under this statute. See 20 U.S.C. § 1415(i)(2). The IDEA also sets forth the standard

of review applicable to such civil actions, see 20 U.S.C. § 1415(i)(2)(B), and contains a "stay put" provision which controls the manner in which an educational placement may be changed while proceedings under this statute are pending, see 20 U.S.C. § 1415(j).

The IDEA's "stay put" provision states, in relevant part, that: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement." Id.  The law is clear that an administrative decision in favor of the parents is equivalent to an agreement between the state agency and the parents and, therefore, represents the child's current education placement for purposes of the IDEA's "stay put" provision. See  34 C.F.R. § 300.514(c) (2004); Sch. Comm. of Town of Burlington v. Mass. Dep't of Educ., 471 U.S. 359, 373 (1985); Bd. of Educ. v. Schutz, 290 F.3d 476, 482-84 (2d Cir. 2002); Georgia State Dep't of Educ. v. Derrick C., 314 F.3d 545, 552 (11th Cir. 2002); Susquenita Sch. Dist. v. Raelee S., 96 F.3d 78, 83-84 (3d Cir. 1996); Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings, 903 F.2d 635, 641 (9th Cir. 1990); Bd. of Educ. of Pine Plains Cent. Sch. Dist. v. Engwiller, 170 F. Supp.2d 410, 413-14 (S.D.N.Y. 2002). These authorities also support the conclusion that the reimbursement for compensatory education through August 2005 that was ordered by the AAO in this case constitutes part of the "current educational placement" for purposes of the IDEA's "stay put" provision, and that APS may not avoid or postpone its duty to reimburse the Millers based on the fact that the litigation is still pending.

In light of these authorities, I view APS's motion for leave to file a counterclaim as presenting a legal question that is answered by the application of the IDEA's "stay put" provision and its implementing regulations. Because Congress has clearly spoken on the issue, this case is not one in which a court may, under the guise of traditional equitable principles, "override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 496 (2001). Under the comprehensive statutory scheme that Congress enacted to provide free appropriate public education to individuals with disabilities, APS already has incurred a financial obligation to reimburse the Millers in accordance with the AAO's decision and may not avoid that result through the counterclaim asserted here.

In No. 05-487 MCA/LFG, APS conceded in its own motion papers that: "If APS pursues the regular course of appeal and files a claim in the federal district court by the time the case reaches a decision, APS' claim will be moot because the time for reimbursement will have expired and S.M. will likely be in high school." [No. 05-487 MCA/LFG, Doc. 1, at 6; Doc. 2, at 2; Doc. 5, at 2.] APS further supported its claim of mootness in the reply brief it filed in that case, where it presented relevant excerpts from the AAO's decision as an exhibit and cited Aaron M. ex. rel. Glen M. v. Yomtoob, No. 00 C 7732, 2003 WL 22836308, at *7 (N.D. Ill. Nov. 25, 2003), for the proposition that "parents who enrolled [a] student in private school were not required to reimburse [the] school for those expenses even where the IEP was later found to be appropriate." [No. 05-487 MCA/LFG, Doc. 11, at 5.] This proposition accords with the authorities cited in the Court's *Memorandum Opinion and*

*Order* in No. 05-487 MCA/LFG, from which APS did not timely appeal. See Engwiller, 170 F. Supp. 2d at 414 (concluding that a school district was required to pay the student's tuition until the end of the appeals process, and "[t]he fact that the District fears that the Engwillers will be unable to repay the sums so expended does not change this result"); cf. Raelee S., 96 F.3d at 86-87 ("While parents who reject a proposed IEP bear the initial expenses of a unilateral placement, the school district's financial responsibility should begin when there is an administrative or judicial decision vindicating the parents' position.").

Insofar as APS's assertion of a counterclaim in the case at bar is directly contrary to its concession that such a claim would become moot in No. 05-487 MCA/LFG, principles derived from the doctrine of judicial estoppel also may be relevant in determining whether the interests of justice weigh in favor of permitting such a counterclaim to be added under Fed. R. Civ. P. 15(a) or 13(f). "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'" Johnson v. Linden City Corp., 405 F.3d 1065, 1069 (10th Cir. 2005) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895)).

In No. 05-487 MCA/LFG, APS took the position that the reimbursement ordered by the AAO would have to occur by August 2005 if the Court did not grant a preliminary injunction. By making this admission, APS succeeded in getting the Court to expedite consideration of the school district's motion for a preliminary injunction so that a final ruling

was made before the issue became moot. Thus, APS obtained a procedural advantage or benefit in No. 05-487 MCA/LFG as a direct result of its admission that its claim would become moot after August 2005.

APS now asserts a directly contrary position, *i.e.*, that it is still possible to avoid or delay its obligation to reimburse the Millers by means of the ordinary procedures available in this civil action after August 2005. Allowing APS to avoid the finality of the Court's decision in No. 05-487 MCA/LFG in this manner is unfairly prejudicial to the Millers for reasons that have been cogently articulated by other courts in IDEA cases.

> The purpose of the Act, which is to ensure that every child receive a "free and appropriate education" is not advanced by requiring parents, who have succeeded in obtaining a ruling that a proposed IEP is inadequate, to front the funds for continued private education. . . . Without interim financial support, a parent's "choice" to have his child remain in what the state has determined to be an appropriate private school placement amounts to no choice at all. The prospect of reimbursement at the end of the litigation turnpike is of little consolation to a parent who cannot pay the toll at the outset.

Raelee S., 96 F.3d at 86-87. Similar considerations apply when the parents are left with the prospect of having to repay the school district for any special educational benefits the student has received at the end of successive rounds of litigation, because "requiring parents to reimburse a school district that ultimately prevails in a challenge to its proposed IEP would make parents without financial resources hesitant to take advantage of the stay-put protections. Such a result would undermine the IDEA's fundamental policy goals of providing a 'free appropriate public education' for disabled children and ensuring that their rights and the rights of their parents are protected." Aaron M. ex. rel. Glen M., No. 00 C

7732, 2003 WL 22836308, at *7 (citations omitted); see <u>Lauren W. ex. rel. James W. v. Defaminis</u>, No. Civ.A. 03-CV-1526, 2005 WL 2989712, at *5-6 (E.D. Pa. July 20, 2005) (applying these principles to a counterclaim for unjust enrichment).

For these reasons, the Court concludes that the interests of justice do not weigh in favor of permitting APS to add their proposed counterclaim to this action at this juncture because that counterclaim is directly contrary to the position APS asserted in No. 05-487 MCA/LFG and would be subject to dismissal for lack of jurisdiction based on mootness. APS already had its day in court in No. 05-487 MCA/LFG, and the obligation to reimburse the Millers for the compensatory education awarded by the AAO for the period ending in August 2005 cannot be delayed or reversed at this juncture.

My ruling is, of course, limited to the issue of reimbursing the Millers for the compensatory education awarded by the AAO through August 2005. As previously stated in No. 05-487 MCA/LFG, my ruling on this issue does not necessarily preclude the parties from litigating *other* aspects of the AAO's decision (*i.e.*, those which do not concern the reimbursement for compensatory education through August 2005).

### III.    CONCLUSION

For the foregoing reasons, APS's motion to dismiss or, in the alternative, for leave to amend its *Answer* and file a counterclaim is denied. By no later than January 27, 2006, APS is ordered to provide the Millers' counsel with the name and business address of its superintendent or other person authorized to accept service on its behalf, and the Millers are granted 30 days leave to re-attempt service on such a person.

**IT IS THEREFORE ORDERED** that *Defendant Board of Education of the Albuquerque Public Schools' Motion to Dismiss or in the Alternative Motion for Leave to Amend Answer and Add Counterclaim* [Doc. No. 5] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant APS shall provide counsel for Plaintiffs with the name and business address of APS's superintendent or other person designated to accept service on its behalf by no later than January 27, 2006, and Plaintiffs are granted leave to re-attempt service of process on APS's superintendent or other designated person within thirty (30) days after the filing of this *Memorandum Opinion and Order*.

**SO ORDERED,** this 18th day of January, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge