## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LESLIE  and JACK MILLER, on behalf
of their minor child, S.M.,

      Plaintiffs,

v.                                     CIV. NO.  05-502 MCA/WPL

BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,

      Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING IN
## PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL

Plaintiffs Leslie and Jack Miller filed suit against the Board of Education of the Albuquerque Public Schools (APS), claiming that APS did not provide their child with a free appropriate public education (FAPE) under the Individuals with Disabilities Act (IDEA), and also that APS violated Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act of 1973. In their Complaint, the Millers assert two main claims against APS: that APS failed to provide Books on Tape to their child, which constitutes intentional discrimination on the basis of disability, and that APS refused to provide their child with specialized reading instruction by academic language therapists (ALTs), who have specialized training to provide direct, multisensory reading instruction to students with reading disabilities.

The Millers filed a Motion To Compel further discovery from APS, seeking to compel APS to provide further answers to Interrogatory Nos. 1 - 8, 13 and 14 and to compel the production of documents from APS pursuant to Request for Production Nos. 7, 8, 9 and 11. [Doc. 32]

Interrogatory Nos. 1 - 7, 13 and 14, and Request for Production Nos. 7 and 8 seek further discovery about the refusal of APS to provide instruction by ALTs, while the remaining discovery requests involve the failure to provide Books on Tape. This Order will grant in part and deny in part the Millers' Motion to Compel.

## DISCUSSION

The IDEA confers upon disabled students an enforceable substantive right to receive an education that is both appropriate and free. *Honig v. Doe*, 484 U.S. 305, 310 (1988); *Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 925 (10th Cir. 1995). The IDEA also contains extensive procedural safeguards that guarantee that parents of disabled children have an opportunity for meaningful input into decisions that affect their children's education and the right to seek review of any decisions that they think are inappropriate. *Honig*, 484 U.S. at 311-12; *Murray*, 51 F.3d at 925. Under the IDEA, a school district must follow the procedures set forth in the IDEA, and must develop an individualized education program for the child through procedures reasonably calculated to enable the child to receive educational benefits. *O'Toole v. Olathe Unified Sch. Dist. No. 233*, 144 F.3d 692, 701 (10th Cir. 1998).

Section 504 of the Rehabilitation Act prohibits federally funded state and local agencies from discriminating against students with disabilities, while Title II of the ADA prohibits discrimination in public services furnished by governmental entities. *Swenson v. Lincoln County Sch. Dist. No. 2*, 260 F. Supp. 2d 1136, 1144 (D. Wyo. 2003). The regulations promulgated under section 504 generally conform to the standards established by the IDEA, and courts evaluate a student's ADA claim by reference to section 504 standards. *See Urban v. Jefferson County School Dist. R-1*, 89 F.3d 720, 728 (10th Cir. 1996). To prove discrimination under section 504 something more than a simple failure

to provide a FAPE must be shown. *N. L. ex rel Mrs. C. v. Knox County Schools*, 315 F.3d 688, 695 (6th Cir. 2003). Section 504 claims are dismissed when IDEA claims brought on the theory of denial of a FAPE are also dismissed. *Id*. at 695-96.

Rule 26 allows discovery of any matter which is relevant to the claim or defense of any party "if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). A court's decision to limit or deny discovery "rests on a balancing of various factors: the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. U.S. Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996). A court may deny the request for discovery entirely, or may limit the conditions, time, place or topics of discovery or the manner in which the material will be disclosed.  *Id.* at 518; FED. R. CIV. P. 26(c).

### Predetermination of Reading Instruction

The Millers contend that APS has refused to provide reading instruction by ALTs for their child because APS has a predetermined policy that it will not provide ALT reading instruction. The Millers surmise that APS adopted this policy some time after May of 1998, when APS closed its Language Clinic, which for many years provided ALT reading instruction on a one-on-one basis to children with reading disabilities. The Millers claim that APS offered their child the Wilson Reading program because APS has invested its resources in that teaching methodology.

In evaluating the Millers' claims, the court should begin by asking whether APS complied with the procedures set forth in the IDEA, including whether the IEP complied with the requirements of the IDEA. *O'Toole*, 144 F.3d at 701. Technical deviations from the procedural requirements of the

IDEA do not render an IEP entirely invalid; "to hold otherwise would 'exalt form over substance.'" *Id.* The court should then determine whether the IEP was reasonably calculated to enable the child to receive educational benefits.[1] *Id.* An appropriate education is not one which is guaranteed to maximize the child's potential, and an IEP is not inadequate simply because the parents show that the child makes better progress in a different program. *Id.* at 708.

The Sixth Circuit has held that a school district may not decide that, because it has invested significant resources in a program, that program is always going to be appropriate for educating children with a specific disability, regardless of evidence to the contrary of the child's individualized needs. *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840, 859 (6th Cir. 2004). "A placement decision may only be considered to have been based on the child's IEP when the child's individual characteristics, including demonstrated response to particular types of educational programs, are taken into account." *Id.* Where the school district refused to consider any information that the parents provided about their child's response to a one-on-one applied behavioral analysis program, and insisted on using the school district's existing program, the district deprived the parents of meaningful participation in the IEP process and deprived the child of a FAPE. *Id.* at 857-59.

Whether the Tenth Circuit will adopt the Sixth Circuit's position in *Deal* is open to question because the Circuits disagree on the level of education that must be provided to a disabled child to constitute a FAPE. Six Circuit Courts of Appeal, including the Sixth Circuit, require that an IEP must confer a "meaningful educational benefit." Lester Aron, *Too Much or Not Enough: How Have the*

---

[1] Although the Millers claim that the IDEA and Section 504 require that public education for a student with disability must be as effective as that offered to nondisabled peers [Doc. 33 at 3], that position has been rejected by the United States Supreme Court. *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 200 (1982) ("The District Court and the Court of Appeals thus erred when they held that the Act requires New York to maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children.")

*Circuit Courts Defined a Free Appropriate Public Education After Rowley?*, 39 SUFFOLK U. L. REV. 1, 6-7 (2005); *Deal*, 392 F.3d at 862 ("[W]e agree that the IDEA requires an IEP to confer a "meaningful educational benefit" gauged in relation to the potential of the child.") In contrast, five Circuit Courts of Appeal, including the Tenth Circuit, apply a lesser standard in the nature of "adequate benefit" or "some benefit," and the Seventh Circuit appears to apply a mixture of both. Aron, *supra*, at 7 ; *O'Toole*, 144 F.3d at 708 ("Mollys' IEPs, even if 'not optimal,' were calculated to, and did, confer some educational benefits, as required by the IDEA and Kansas law." (citation omitted)). At least one commentator has criticized *Deal* as a decision that finds a procedural violation as "a convenient way to reach a result that 'feels right' to the court." Terry Jean Seligman, *Rowley Comes Home to Roost: Judicial Review of Autism Special Education Disputes*, 9 U.C. DAVIS J. JUV. L. & POL'Y 217, 268 (2005).

Citing *O'Toole*, APS asserts that the Millers are not entitled to discovery related to the Language Clinic because, once APS selected an appropriate methodology, it was not required to search for alternative methodologies.[2] [Doc. 39 at 7] This argument confuses the procedural and substantive protections provided by the IDEA.

As a substantive matter, parents do not have a right under the IDEA to compel a school district to provide a specific program or employ a specific methodology in educating their child. *O'Toole,* 144 F.3d at 709; *Lachman v. Ill. State Bd. of Educ.*, 852 F.2d 290, 297 (7th Cir. 1988); *see N. L. ex rel Mrs. C. v. Knox County Sch.*, 315 F.3d 688, 693-95 (6th Cir. 2003); *Blackmon v. Springfield R-XII Sch. Dist.*, 198 F.3d 648, 657-58 (8th Cir. 1999). However, one of the primary

---

[2] As the Millers note, APS makes assertions in its Response that are not supported by affidavit or by citation to the underlying IDEA record. [Doc. 39 at 5 - 7]

5

goals of the procedural requirements of the IDEA is to ensure parental participation in the formulation of a child's IEP. *O'Toole*, 144 F.3d at 703. In *Board of Education v. Rowley*, 458 U.S. 176, 205-06 (1982), the United States Supreme Court emphasized the importance Congress attached to the procedural safeguards contained in the IDEA, stating:

> It seems to us no exaggeration to say that Congress placed every bit as much emphasis upon compliance with procedures giving parents and guardians a large measure of participation at every stage of the administrative process, *see, e.g.*, §§ 1415(a)-(d), as it did upon the measurement of the resulting IEP against a substantive standard.

Thus, if the IEP team considers the parents' concerns and information that they provide regarding their child in developing an IEP, parents are not given a veto power over the choice of methodology for their child. School evaluators may prepare reports before the IEP meeting, and may come to the IEP meeting with pre-formed opinions regarding the best course of action for the child "as long as they are willing to listen to the parents and the parents have the opportunity to make objections and suggestions." *Knox County,* 315 F.3d at 694; *see Blackmon*, 198 F.3d at 656-57. As one Court stated, school districts are required to come to IEP meetings with an "open mind" but are not required to come with a "blank mind." *Hanson v. Smith*, 212 F. Supp. 2d 474, 486 (D. Md. 2002) (citing *Doyle v. Arlington County Sch. Bd.*, 806 F. Supp. 1253, 1262 (E.D. Va. 1992)). While a school district must not finalize its placement decision before the IEP meeting, it can and should have given some thought to the child's placement before the IEP meeting. *Id.*

The Millers assert that APS did not come to the IEP meeting with an open mind, and claim that their requested discovery will help establish APS' predetermination to use the Wilson Reading program.

*Interrogatory Nos. 1 and 2:* Interrogatory Nos. 1 and 2 request information about whether

APS provided reading instruction by a certified ALT in a one to one setting after 1998, the school where such instruction was provided, and the names of the ALTs. These interrogatories may lead to the discovery of circumstantial evidence that would support the Millers' claim of predetermination.

*Interrogatory Nos. 3, 4 and 5, and Request for Production Nos. 7 and 8*:   These interrogatories and requests for production request information and documentation about the closing of the APS Language Clinic in 1998. Because the Millers' claims concern denial of FAPE in the 2002 - 2003 school year and thereafter, information about the closing of the Language Clinic four years earlier is too attenuated to the issues presented in this case and is not reasonably calculated to lead to the discovery of admissible evidence.

*Interrogatory Nos. 6, 7 and 13*: Interrogatory Nos. 6 and 7 ask APS to identify all employees who were involved in refusing to provide reading instruction by a CALT to the child at middle and high school. Interrogatory No. 13 asks APS to explain how APS reallocated its resources to better meet the needs of its students after closing the Language Clinic.  These interrogatories seek information about matters that are not at issue in this case. The issue in this case is not whether instruction by ALT is better, or how APS reallocated its resources after closure of the Language Clinic. The issues are whether APS complied with the procedural protections of the IDEA and offered an appropriate education to the child. *O'Toole*, 144 F.3d at 701.

*Interrogatory No. 14*: This interrogatory requests APS to provide all facts which support its denial that APS has refused to provide staff with resources or training to become ALTs. Although APS objected to the interrogatory on the ground that it assumed facts not in evidence, it provided an answer to the interrogatory. I find the answer of APS to be sufficient.

**Books on Tape**

The Millers assert that, during middle school, their child was unable to read his assigned texts, and that APS failed to provide the child with Books on Tape or any technology comparable or equivalent to Books on Tape. Books on Tape are available to school districts through purchased institutional memberships from the nonprofit organization Recordings for the Blind and Dyslexic (RFB&D). The Millers contend that APS has adopted a policy or practice of not explaining or offering Books on Tape to students who qualify, perhaps motivated by a desire to save money.

*Interrogatory No. 8*: In its Answer to the Millers' Complaint, APS states that Books on Tape are but one means for students with disabilities to access the general curriculum. This interrogatory asks APS to identify all "means" that allow students with disabilities to access the general curriculum. While APS's answer might be interesting in a general sense, it is not related to the issues in this case, which are whether APS violated the procedural or substantive provisions of the IDEA by failing to provide Books on Tape to the Millers' child. While the Millers state that they may seek class certification on this issue [Doc. 17 at 11] they have not done so yet, and the "means" that allow other students to access the general curriculum are not relevant to the issues in this case. I will require APS to identify the "means" that they identified to allow the Millers' child to access the general curriculum during middle school.

*Request for Production Nos. 9 and 11*: As narrowed by the parties, these requests seek copies of all RFB&D institutional membership applications and paperwork for all 132 APS schools since 1999, and documents showing all books ordered by all APS schools for all school years since 2001 - 2002. The Millers' requests are irrelevant, overbroad and unduly burdensome. Whether Books on Tape were provided to other students, at other schools, in different school years, after other IEPs

8

were formulated, is not relevant to the provision of Book on Tape to the Millers' child. Also, APS should not be required to expend its efforts to contact 130 schools that the Millers' child did not attend to seek the requested information.

IT IS THEREFORE ORDERED that the Millers' Motion to Compel is granted in part and denied in part. APS shall answer Interrogatory Nos. 1 and 2, and shall answer Interrogatory No.8 by identifying the "means" that APS identified to allow the Miller's child to access the general curriculum. The Millers' Motion to Compel answers and responses to the remaining interrogatories and requests for production is hereby DENIED.

IT IS SO ORDERED.

_____
WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                    9