# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**LESLIE** and **JACK MILLER**,
on behalf of their minor child, **S.M.**,

        Plaintiff,

      vs.                        No. **CIV 05-502 MCA/WPL**

**BOARD OF EDUCATION OF THE
ALBUQUERQUE PUBLIC SCHOOLS,**

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on the parties' briefing regarding Plaintiffs' claims for attorney fees under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400 to 1487.[1] [Doc. 76, 77, 78.] Having considered the parties' submissions, the relevant law, and being otherwise fully advised in the premises, the Court determines that Plaintiffs are entitled to an award of attorney fees and costs in the amount of $8,751.19 for their limited success in the administrative proceedings that preceded this action. For the reasons set forth below, no other fees, costs, or expenses will be awarded.

---

    [1]The IDEA was amended in 2004, and these amendments became effective on July 1, 2005. <u>See</u> Pub. L. No. 108-446, 118 Stat. 2715 (2004). However, all references to the IDEA in this *Memorandum Opinion and Order* concern the version of the statute in effect before July 1, 2005, because the present action was filed before that date.

## I.   BACKGROUND

The history of this litigation is set forth in the *Memorandum Opinion and Order* [Doc. 30] filed on January 18, 2006, the *Memorandum Opinion and Order* [Doc. 75] filed on July 31, 2005, and the *Memorandum Opinion and Order* filed in Board of Education of Albuquerque Public Schools v. Miller, Civil No. 05-487 MCA/LFG (D.N.M. July 22, 2005). For purposes of Plaintiffs' claim for attorney fees and costs, this history can be broken down into three segments, two of which overlap.

The first segment occurred between approximately September 7, 2004, and April 21, 2005, when Plaintiffs retained counsel in conjunction with administrative proceedings conducted pursuant to the IDEA and incurred approximately $23,014.21 in attorney fees, costs, and other expenses according to the representations in briefs.  At issue in these administrative proceedings was the public education that the student, S.M., received from Defendant Albuquerque Public Schools (APS) during the sixth, seventh, and eighth grades at Cleveland Middle School.  Plaintiffs' central contention in the administrative proceedings was that the IDEA required Defendant to provide the student with Plaintiffs' preferred methodology for reading instruction (one-on-one Alternative Language Therapy) and assistive technology (Books on Tape) during the entire course of his public education at APS.

The administrative tribunals which heard Plaintiffs' claims rejected this central contention and concluded that Defendant could offer the student other types of educational methodologies (such as Wilson reading) and assistive technology (such as a Kurzweil machine) without violating the IDEA.  The administrative tribunals also concluded, however,

that there were discrete periods of time during the student's middle-school years when Defendant failed to offer any consistent educational methodology or assistive technology to the student. Accordingly, part of the equitable relief resulting from the administrative proceedings took the form of reimbursement for private educational services and assistive technology that Plaintiffs Leslie and Jack Miller purchased for S.M. to make up for these deficits during the period ending in August 2005, when the student was about to start high school.

The second segment in the history of this litigation occurred between approximately April 27, 2005, and July 25, 2005, when Plaintiffs claim they incurred another $6,654.16 in attorney fees, costs, and other expenses. During that period of time, the Court was considering a motion by APS to preliminarily enjoin a portion of the administrative tribunal's ruling in No. 05-487 MCA/LFG, as well as a motion by Plaintiff to dismiss that action. On July 21, 2005, the Court denied APS's motion for a preliminary injunction and granted Plaintiffs' motion to dismiss. In dismissing No. 05-487 MCA/LFG without prejudice for lack of jurisdiction, the Court reasoned that APS could not bypass the IDEA's statutory scheme for judicial review by invoking the Court's traditional equitable jurisdiction for purposes of granting a preliminary injunction; and once the motion for a preliminary injunction was denied, there was no remaining case or controversy for the Court to adjudicate under Article III of the United States Constitution. [No. 05-487 MCA/LFG, Doc. 16.]

The third segment in the history of this litigation occurred between approximately May 2, 2005, and February 15, 2006, during which time the case at bar (No. 05-502 MCA/WPL) has been pending in this Court, and Plaintiffs claim they incurred an additional $10,706.77 in attorney fees, costs, and other expenses.  In addition to seeking an award of attorney fees in No. 05-502 MCA/WPL, Plaintiffs have sought judicial review of certain portions of  the administrative tribunal's decision under the procedure set forth in the IDEA. They also have asserted claims under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a(a)(2), and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 42 U.S.C. § 12132.  In the *Memorandum Opinion and Order* [Doc. 75] filed on July 31, 2006, the Court rejected each and every one of Plaintiff's claims in this action, except for the issue of attorney fees incurred in the administrative proceedings which preceded it.  The Court ordered the parties to meet and confer regarding the remaining issue of attorney fees, and to file supplemental briefing on this issue in the event that they were unable to reach an agreement.

On August 8, 2006, the parties advised the Court that they were unable to reach agreement as to an award of attorney fees.  Plaintiffs claim they are entitled to a total of $40,347.14 in attorney fees and costs incurred during all three segments of this litigation, while Defendant claims that the circumstances of this case do not warrant an award of any attorney fees or costs for any of the proceedings at issue in this case.  [Doc. 76, 77, 78.]

## II.    **ANALYSIS**

Our Supreme Court has repeatedly stated that:  "In the United States, parties are ordinarily required to bear their own attorney's fees ... absent explicit statutory authority" to seek such fees from the losing party.  <u>Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.</u>, 532 U.S. 598, 602 (2001) (internal quotation marks and citations omitted).  In this case, the  parties have identified only one explicit statutory authority for an award of attorney fees, namely Section 615(i)(3) of the IDEA.

The version of this statute in effect prior to July 1, 2005, states as follows:

(B) Award of attorneys' fees

In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party.

(C) Determination of amount of attorneys' fees

Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished.  No bonus or multiplier may be used in calculating the fees awarded under this subsection.

(D) Prohibition of attorneys' fees and related costs for certain services

 (i) Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--
 (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
 (II) the offer is not accepted within 10 days;  and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

(ii) Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in subsection (e) of this section that is conducted prior to the filing of a complaint under subsection (b)(6) or (k) of this section.

(E) Exception to prohibition on attorneys' fees and related costs

Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

(F) Reduction in amount of attorneys' fees

Except as provided in subparagraph (G), whenever the court finds that--
(i) the parent, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;
(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or
(iv) the attorney representing the parent did not provide to the school district the appropriate information in the due process complaint described in subsection (b)(7)(A) of this section,

the court shall reduce, accordingly, the amount of the attorneys' fees awarded under this section.

(G) Exception to reduction in amount of attorneys' fees

The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

20 U.S.C. § 1415(i)(3) (prior to 2005 amendment).

In order to qualify for an award of attorney fees under this statute, Plaintiffs first must show that they incurred the fees in an "action or proceeding brought under this section," and that they were "the prevailing party" in such an action or proceeding. 20 U.S.C. § 1415(i)(3)(B). I conclude that Plaintiffs have not met these preliminary requirements of the statute with respect to the proceedings stemming from APS's motion for a preliminary injunction in No. 05-487 MCA/LFG.

In that motion, APS attempted to bypass--rather than invoke--the IDEA's statutory framework for judicial review. Accordingly, the proceedings stemming from that motion were not "brought under" Section 615 of the IDEA, and there is no explicit statutory authority for granting Plaintiffs an award of attorney fees incurred in defending against APS's efforts to invoke the Court's traditional equitable jurisdiction in that context. See Vultaggio ex rel. Vultaggio v. Bd. of Educ., Smithtown Central Sch. Dist., 343 F.3d 598, 602-03 (2d Cir. 2003).

Further, the proceedings on APS's motion for preliminary injunction were dismissed without prejudice for lack of jurisdiction, and thus the Court did not have occasion to reach the merits of Plaintiff's IDEA claims. While the Court did refer to the IDEA's "stay put" provision in those proceedings, the mere invocation of the "stay put" provision during the pendency of a proceeding does not make a parent a "prevailing party" for purposes of an attorney-fee award under the IDEA. See J.C. ex rel. J.C. v. Mendham Twp. Bd. of Educ., 29 F. Supp. 2d 214, 221 (D.N.J. 1998) (collecting cases). The invocation of the "stay put"

provision "does not address the merits of the case but simply preserves the status quo" until the merits of the case are decided.  Christopher P. v. Marcus, 915 F.2d 794, 805 (2d Cir. 1990).  As such, the invocation of this provision during the pendency of this case is a form of interim relief which does not trigger an award of attorney fees.  See Hunger v. Leininger, 15 F.3d 664, 670 (7th Cir. 1994).  For these reasons, Plaintiffs are not entitled to an award of the $6,654.16 in attorney fees and costs they claim for the second segment of the litigation, when No. 05-487 MCA/LFG was pending.

Plaintiffs also are not entitled to an award of the $10,706.77 in attorney fees and costs they claim for the third segment of this litigation when the case at bar (No. 05-502 MCA/WPL) was pending.  It is clear from the Court's *Memorandum Opinion and Order* [Doc. 75] filed on July 31, 2006, that Plaintiffs are not the prevailing party with respect to any significant issue for which they sought judicial review under the IDEA.  And since APS did not timely seek judicial review of the administrative tribunal's ruling under the IDEA and was not permitted to add a counterclaim in this action, there was no need for Plaintiffs to seek judicial review by means of this civil action in order to protect their entitlement to the relief awarded by the administrative tribunal.  [Doc. 30.]  Indeed, the record reflects that Plaintiffs *rejected* much of that administrative relief when they refused to allow the student to enroll in the Wilson reading class offered during his ninth-grade year.  [Doc. 7.]  As in the case of No. 05-487 MCA/LFG, any prior rulings the Court made in Plaintiffs' favor in No.

05-502 MCA/WPL were in the nature of interim relief that does not qualify for an attorney-fees award.[2]  See Hunger, 45 F.3d at 670.

The only remaining issue is whether Plaintiffs are entitled to an award encompassing any portion of the $23,014.21 in attorney fees, costs, and other expenses they incurred from October 31, 2004, through April 29, 2005, in conjunction with the administrative proceedings conducted during the first segment of this litigation.[3]  While the administrative tribunals rejected Plaintiffs' central contention that the student was entitled to Alternative Language Therapy (ALT) and Books on Tape throughout the course of his public education at APS, the administrative tribunals did find discrete violations of the IDEA during the student's middle-school years.  As part of the remedy for these violations, the administrative tribunals ordered APS to reimburse Plaintiffs for the cost of ALT services from March 2004 to August 2005, as well as the cost of WYNN software purchased during that period.  Plaintiffs accepted this reimbursement.

---

[2]The amount of attorney fees the parties expended in the litigation that followed the administrative proceedings may remain relevant to the Court's inquiry as to whether either party "unreasonably protracted the final resolution of the controversy" within the meaning of 20 U.S.C. § 1415(i)(3)(F).  The Court conducts that inquiry in a later section of this *Memorandum Opinion and Order*.

[3]Plaintiffs have not submitted any request for attorney fees or costs incurred in preparing their fee petition, and no fees or costs will be awarded for this purpose.  The Court gave the parties ample opportunity to settle the issue of fees and costs incurred in the administrative proceedings, and Plaintiffs squandered this opportunity by insisting on an award of fees and costs for work that goes beyond the scope of the administrative proceedings, in defiance of the express terms of the Court's *Memorandum Opinion and Order* [Doc. 75] filed on July 31, 2006.

Thus, the partial reimbursement for ALT services and WYNN software was a significant issue on which Plaintiffs achieved some benefit and materially altered their legal relationship with APS. Plaintiffs' success on this issue during the administrative proceedings is enough to make them a "prevailing party" with respect to those proceedings under the Supreme Court's generous interpretation of that term. See Farrar v. Hobby, 506 U.S. 103, 111-12 (1992) ("[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."); Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("[P]laintiffs may be considered 'prevailing parties' for attorney fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989) ("[A]t a minimum, ... the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant.").

Further, the hearings conducted by the administrative tribunals in this case constitute a "proceeding brought under" Section 615 of the IDEA. 20 U.S.C. § 1415(i)(3)(B). Therefore, the statute allows a court to award attorney fees for work on which Plaintiffs succeeded before the administrative tribunals even if neither party sought judicial review of the merits of those tribunals' decision-making. See A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 75 (2d Cir. 2005). "The fact that all the relief they got came

-10-

in the administrative rather than in the judicial proceeding is not a bar" to an award of attorney fees incurred during the administrative proceeding. Hunger, 15 F.3d at 670; accord Linda T. v. Rice Lake Area Sch. Dist., 417 F.3d 704, 707 (7th Cir. 2005).

The general rule is that "[a] prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." Abu-Sahyun v. Palo Alto Unified Sch. Dist., 843 F.2d 1250, 1252 (9th Cir.1988). "Whether or not 'special circumstances' exist involves an examination of two factors: (1) whether awarding fees would further the congressional purpose in enacting the [statute], and (2) the balance of the equities." Id.

Plaintiffs' status as a prevailing party on certain issues decided by the administrative tribunal does not automatically entitle them to an award equivalent to the entire amount of attorney fees they incurred during the course of the administrative proceedings or thereafter. In this regard, the IDEA expressly limits attorney-fee awards to those fees which are "reasonable" and lists several considerations to be taken into account in calculating the size of such an award, including the existence and timing of settlement offers and the extent to which a party "unreasonably protracted the final resolution of the controversy." 20 U.S.C. § 1415(i)(3).

Every circuit which has addressed the issue has concluded that the degree of a plaintiff's success in an IDEA proceeding is the most critical factor in determining the reasonableness of fees to be awarded under that statute. See Aguirre v. Los Angeles Unified Sch. Dist., 461 F.3d 1114, 1118-20 (9th Cir. 2006) (collecting cases and reciting legislative

history).  The "degree of success" factor derives from the Supreme Court's reasoning in

Hensley, 461 U.S. at 430-36.

Other courts have identified sound policy reasons for applying the reasoning of

Hensley to IDEA cases:

> First, Hensley represents the established standard for awarding attorney's fees
> in civil rights cases.  Since the IDEA does not supply a standard different from
> other standards governed by Hensley, either we would have to create new
> criteria for judging awards under IDEA, or we would have to defer entirely to
> lower courts, thereby permitting fee awards to vary greatly from one case to
> the next, as each judge applies his or her own criteria for arriving at a
> reasonable fee.  Second, the Hensley standard will not only guide courts, but
> allow parties themselves to better assess the prospective costs of [litigation]
> and make more informed choices about when to litigate and when to settle.
> The rule will help to deter parties (or their lawyers) from adding frivolous
> claims that exacerbate disputes and strain the resources of both parents and
> school districts.  An established standard will also help parents and school
> districts settle post-litigation fee disputes without undertaking a second round
> of lawsuits.
>
> The Hensley standard will help deter submission of multiple,
> nonmeritorious claims.  It is understandable that without cost considerations,
> parents facing litigation would bring as many claims as possible, hoping to
> secure a larger share of the district's resources--whether in the form of
> reimbursements, additional staff time, or educational technology--than would
> be otherwise allotted to their children.  Lawyers may also have incentive to
> bring baseless claims in order to increase billable hours devoted to a case.
> Acquiring a client with one strong claim should not give special education
> attorneys the green light to bill time on every conceivable issue.  All children
> suffer when the schools' coffers are diminished on account of expensive,
> needless litigation.  In order to balance the needs of IDEA claimants and
> school districts, Hensley offers parents and their lawyers an incentive to avoid
> making frivolous claims while preserving their ability to raise meritorious
> claims.

Aguirre, 461 F.3d at 1120 (citation omitted).

While Plaintiffs' degree of success remains the most critical factor under the <u>Hensley</u> standard, the Court also may consider other factors traditionally employed to gauge the reasonableness of attorney fees. These traditional factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Hensley</u>, 461 U.S. at 430 n.3 (citation omitted). "[M]any of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate." <u>Id.</u> at 434 n.9.

In this case, Defendant does not dispute the reasonableness of the $200.00 hourly rate claimed by Plaintiffs' counsel. However, the billing entries provided by Plaintiffs' counsel are not broken down into work on discrete claims, and thus the Court does not have occasion to simply add up the number of hours expended on a particular claim or issue on which Plaintiffs succeeded during the administrative proceedings. Because the record in this case does not permit the Court "to divide the hours expended on a claim-by-claim basis" with respect to the administrative proceedings, the Court instead "focus[es] on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the[se]" proceedings. <u>Id.</u> at 435.

Defendant contends that the factors listed above weigh in favor of declining to award any attorney fees or costs to Plaintiffs in this case. In particular, they point to the provisions of 20 U.S.C. § 1415(i)(3)(D), which prohibit the award of attorney fees and related costs "for services performed subsequent to the time of a written offer of settlement to a parent if" the following conditions are satisfied. First, "in the case of an administrative proceeding, [the written offer must be made] at any time more than 10 days before the proceeding begins." Id. Second, that offer must not be "accepted within 10 days." Id. Finally, there must be a finding by "the court or administrative hearing officer" that "the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement." Id.

In an effort to meet these requirements, Defendant has presented evidence of a written offer of settlement that was extended to Plaintiffs on November 24, 2004. [Ex. A to Doc. 77.] Plaintiffs respond by noting that this offer is dated just six days before the first administrative hearing began. Plaintiffs also point out that the $6,000.00 payment included in that offer is less than the total cost of the WYNN software, ALT services, and attorney fees incurred as of that date. In this regard, the billing records of Plaintiffs' counsel reflect that she spent approximately 22 hours on this matter (which would translate to approximately $4,400.00 in attorney fees) before attending the mediation session with APS on November 24, 2004. [Ex. 2 to Doc. 76.] The receipts contained in the Administrative Record reflect that Plaintiffs paid at least $1,535.00 for ALT therapy during that period. [Tr. 12-1-04, at 72, Ex. 16.] Plaintiffs' ALT therapist testified at the beginning of December 2004 that she was seeing the student four hours per week and had recently raised her hourly rate to $35.00

per hour.  [Tr. 12-1-04, at 71-73.]  Plaintiff Leslie Miller testified that she paid in the range

of $900.00 for the WYNN software.  [Tr. 12-3-04, at 38.]

On this record, I conclude that Defendant's written settlement offer does not meet the

technical requirements for precluding an award of attorney fees and costs under 20 U.S.C.

§ 1415(i)(3)(D), because that offer was not extended 10 days before the administrative

hearings began.  In addition, the $6,000.00 that Defendant offered to reimburse Plaintiffs for

expenses and fees was at least a few hundred dollars short of the total amount of fees and

expenses that Plaintiffs actually incurred as of November 24, 2004, and were entitled to

recover as a result of the administrative tribunal's ruling.

I also conclude, however, that Defendant's written settlement offer is relevant to

determining the degree of success that Plaintiffs ultimately obtained as a result of the

administrative proceedings they chose to pursue after that date.[4]  In particular, I note that

many of the items in APS's written settlement offer of November 24, 2004, were later

incorporated in the equitable relief ordered by the administrative tribunals at the conclusion

of those proceedings, such as the provision of Wilson reading, an assistive-technology

evaluation, and Books on Tape.  [Ex. A to Doc. 77.]  The terms of this settlement offer

reinforce the evidence found elsewhere in the record which shows that the ultimate result of

---

[4]I do not have occasion to consider any subsequent negotiations during the settlement
conference before Magistrate Judge Lynch in this civil action because, as noted above, Plaintiffs did
not prevail on the IDEA claims for which they sought judicial review in this action, and therefore
Plaintiffs are not entitled to an award of attorney fees for this final segment of the litigation regardless
of any settlement offers that were conveyed or rejected at the settlement conference.

the administrative proceedings did not provide much more relief to Plaintiffs than APS was willing to offer at the time the proceedings began.

Further, the central issue on which the parties could not agree--the choice of a suitable methodology for reading instruction and a suitable form of assistive technology--is not particularly novel or difficult.  As the Court previously explained in the *Memorandum Opinion and Order* [Doc. 75] filed on July 31, 2006, there is an existing body of case law concerning the special educational needs of students with dyslexia and similar disabilities which explains the respective roles of courts and administrative tribunals in resolving disputes over a school district's choice of a particular educational methodology or technology to address these needs.  See, e.g., Grim v. Rhinebeck Central Sch. Dist., 346 F.3d 377, 383 (2d Cir. 2003); E.S. v. Indep. Sch. Dist., No. 196, Rosemount-Apple Valley-Eagan, 135 F.3d 566, 569 (8th Cir. 1998); Roland M. v. Concord Sch. Committee, 910 F.2d 983, 992 (1st Cir. 1990);  White v. Ascension Parish Sch. Bd., 343 F.3d 373, 380 (5th Cir. 2003). The rules employed in those cases are logical and obvious extensions of the general principles articulated by the Supreme Court in Bd. of Educ. v. Rowley, 458 U.S. 176 (1982), and previously applied by the Tenth Circuit in O'Toole ex rel. O'Toole v. Olathe Dist. Schs. Unified Sch. Dist. No. 233,  144 F.3d 692, 709 (10th Cir. 1998).  In light of these authorities, Plaintiffs' claims in this case do not present complex issues of first impression the resolution of which required a lengthy adversarial proceeding involving extensive legal research or factual development.

Rather, this case involved relatively straightforward and easily provable violations of the IDEA during a discrete period of time when the school district's own records, as well as the actions of its employees, evinced a failure to implement its own decision to provide the student with Books on Tape and a failure to use any consistent methodology for teaching him to read. The relative ease with which Plaintiffs could prove such straightforward violations of the IDEA and provoke a substantial written settlement offer from Defendant does not entitle Plaintiffs to exploit the situation by using these violations as a springboard to "bring as many claims as possible . . . in order to increase billable hours devoted to a case." Aguirre, 461 F.3d at 1120. "Acquiring a client with one strong claim should not give special education attorneys the green light to bill time on every conceivable issue." Id. Yet that is exactly what Plaintiffs' counsel did in this case with respect to both the administrative proceedings and the civil action that followed.

In this regard, I find that during the course of both the administrative proceeding and this civil action, Plaintiffs "unreasonably protracted the final resolution of the controversy" within the meaning of 20 U.S.C. § 1415(i)(3)(F). Such conduct may provide a basis for reducing an attorney-fee award under this statute. Before doing so, however, I must consider the extent to which Defendant also "unreasonably protracted the final resolution of the action or proceeding" or engaged in "a violation of this section." 20 U.S.C. § 1415(i)(3)(G). While I do not find that APS engaged in such conduct during the administrative proceeding, I cannot ignore the extent to which the school district's counsel protracted the final resolution of this matter by moving for a preliminary injunction in No. 05-487 MCA/LFG and seeking

to assert an untimely counterclaim in No. 05-502 MCA/WPL.  At one time or another, both parties were engaged in "the tit-for-tat strategy" of responding to the unnecessary actions of their opponent by engaging in unnecessary actions of their own, as described in Troy Sch. Dist. v. Boutsikaris, 317 F. Supp. 2d 788, 802 (E.D. Mich. 2004).  Because both parties are responsible for unreasonably protracting the final resolution of this case, the Court will not further reduce the Plaintiffs' attorney-fee award on the grounds set forth in 20 U.S.C. § 1415(i)(3)(F).  See Boutsikaris, 317 F. Supp. 2d at 802.

Nevertheless, the limited degree of Plaintiffs' success in the administrative proceedings, combined with their lack of any success at all in the civil action that followed, provides an independent basis for substantially reducing the amount of attorney fees and costs they are now claiming.   See id. at 797-800 (reducing claimed attorney fees of $74,807.75 to an award of $24,000.00).   Other courts have not hesitated to award significantly less than the amounts claimed by parents who prevailed to a limited degree in an action or proceeding brought under Section 615 of the IDEA.  See, e.g., A.S. ex rel. V.S. v. Colts Neck Bd. of Educ., No. 04-4749, 2006 WL 1795134, at *2-*4 (3d Cir. 2006) (unpublished disposition affirming district court's decision to reduce claimed attorney fees of $70,208.81 by 80% to an award of $13,636.45); Kari H. v. Franklin Special Sch. Dist., 187 F.3d 636, 1999 WL 486400 (6th Cir. 1999) (unpublished disposition affirming a two-thirds reduction from the  amount claimed to the amount awarded); Max M. v. New Trier High School Dist. No. 203, 859 F.2d 1297, 1301-02 (7th Cir. 1988) (affirming 50% reduction from lodestar figure of $49,990.00 to an award of $24,995.00); Chagnon v. Town

-18-

of Shrewsbury, 901 F. Supp. 32, 36 (D. Mass. 1995) (reducing claimed attorney fees by half to an award of $9,439.47); Lopez v. Dist. of Columbia, 383 F. Supp. 2d 18, 24-26 (D.D.C. 2005) (reducing claimed attorney fees of $23,834.00 to an award of $9,530.00 and noting that the District of Columbia Appropriations Act of 2005 limited the funds available to pay this award to no more than $4,000.00 for each action or proceeding); Indep. Sch. Dist. No. 283 v. S.D., 948 F. Supp. 892, 896-97 (D. Minn. 1996) (reducing claimed attorney fees of $41,800.00 to an award of $4,793.75). The amounts awarded in these other cases is also a relevant factor in determining the reasonableness of attorney fees incurred in this case. See Hensley, 461 U.S. at 430 n.3.

Taking into account the limited degree of Plaintiff's success in the administrative proceedings, the lack of novelty or difficulty in the questions presented, the amounts awarded in similar cases, the calculation of the number of hours reasonably expended at a reasonable hourly rate, the congressional purposes of the IDEA, and the balance of equities in this case, I conclude that Plaintiff's claim of $23,014.21 for attorney fees, costs, and other expenses incurred in the administrative proceedings must be reduced to an award of $8,751.19 in attorney fees and costs. $8,000.00 of this amount is awarded for attorney fees at an hourly rate of $200.00 for 40.0 hours. $540.00 of the total award is designated for gross receipts tax on the $8,000.00 in attorney fees. The remaining $211.19 is for the copying charges associated with preparing exhibits and other portions of the Administrative Record, which I construe as taxable costs under D.N.M. LR-Civ. 54.2(e) in the special context of an IDEA case. This award of costs does not include the $37.33 in legal research

expenses for use of the Lexis service that appear in the billing records for the period in question.

In calculating this award, I have not reduced or prohibited any fees or costs on the grounds articulated in 20 U.S.C. § 1415(i)(3)(D) or (F). Neither Defendant's written settlement offer nor Plaintiffs' role in unduly protracting the final resolution of their dispute with APS provide a statutory basis for reducing or prohibiting an award of attorney fees and costs. Rather, the primary factors in the Court's decision on this issue are the Plaintiffs' limited degree of success on their claims, and the statutory requirement that the fees must be reasonable.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, the Court awards Plaintiff $8,751.19 in attorney fees and costs for the administrative proceedings which preceded this civil action. Plaintiffs are not entitled to any further award of attorney fees, costs, or other expenses associated with this civil action or the proceedings on APS's motion for a preliminary injunction in No. 05-487 MCA/LFG.

**IT IS THEREFORE ORDERED** that Plaintiffs are awarded $8,751.19 in attorney fees and costs for the administrative proceedings which preceded this civil action, as itemized above.

**SO ORDERED,** this 23rd day of October, 2006, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge